# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GERONIMO CLEMENA** | : | **CIVIL ACTION** |
| *Plaintiff* | : | |
| | : | **NO. 17-428** |
| **v.** | : | |
| | : | |
| **PHILADELPHIA COLLEGE OF** | : | |
| **OSTEOPATHIC MEDICINE** | : | |
| *Defendant* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                                   AUGUST 11, 2017

## MEMORANDUM OPINION

**INTRODUCTION**

      Geronimo Clemena ("Plaintiff") filed an employment discrimination complaint against his former employer, Philadelphia College of Osteopathic Medicine ("Defendant"), and asserts allegations of unlawful discrimination and hostile work environment based on, *inter alia,* violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. ("Title VII"); 42 U.S.C. § 1981 ("§ 1981"); the Americans with Disabilities Act of 1990, as amended by the ADA Amendments Act of 2008, 42 U.S.C. § 12101 *et seq*. ("ADA"), and the Pennsylvania Human Relations Act, 43 P.S. § 951 *et seq*. ("PHRA"). [ECF 1]. Before this Court is Defendant's *motion to dismiss* the complaint filed pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6), for failure to state a claim upon which relief can be granted. [ECF 9]. Plaintiff has opposed the motion. [ECF 12]. The issues presented have been fully briefed and, therefore, this matter is ripe for disposition.

      For the reasons set forth herein, Defendant's motion to dismiss is granted, *in part*, and denied, *in part*.

## BACKGROUND

When ruling on a motion to dismiss, this Court must accept as true all the factual allegations in the plaintiff's complaint, and construe the complaint in the light most favorable to the non-movant. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (citing *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)). The factual allegations contained in Plaintiff's complaint are summarized as follows:

Plaintiff alleges that he is a diabetic and that his national origin is Filipino. (Compl. at ¶¶20-21). On June 25, 2014, Defendant offered Plaintiff a position as an Operating Engineer on a "'swing shift' or irregular workdays" schedule. (*Id.* at ¶¶22-23). Plaintiff informed Defendant that he preferred a "1st shift work schedule . . . [working] Monday- Friday; 8:00 am - 4:00 pm with Saturdays and Sundays off," yet accepted Defendant's swing shift offer. (*Id.* at ¶¶24-26). Plaintiff alleges that he continuously informed Defendant of his shift preference, and Defendant assured Plaintiff that he could request a transfer to a first-shift work schedule if there was a first-shift job opening. (*Id.* at ¶¶27-28).

Plaintiff contends that in December 2014, an opening for an unspecified first-shift position became available. (*Id.* at ¶30). On December 15, 2014, Plaintiff requested a transfer to the first-shift position from his Chief Facilities Director, Francis H. Windel ("Windel"). (*Id.*). During the same conversation, Plaintiff informed Windel that he had diabetes and that his physician had advised that, as a diabetic, Plaintiff should regularly get adequate sleep to obtain daily normal glucose levels and endocrine function. (*Id.* at ¶¶31-34). Plaintiff explained to Windel that the swing shift prevented him from obtaining adequate sleep and, consequently, a normal glucose level. (*Id.* at ¶¶35-38). Windel stated he would defer the transfer decision to Plaintiff's manager, Chris Gearhart. (*Id.* at ¶42). On January 12, 2015, Defendant hired a Caucasian employee from the maintenance department to fill the first-shift opening. (*Id.* at ¶¶44-45).

On May 4, 2015, a first-shift Operating Engineer position vacancy was posted. (*Id.* at ¶47). On May 20, 2015, Plaintiff sent an email to the Human Resources Assistant Director, Alexis Sherman ("Sherman") and Windel, formally requesting a transfer to this first-shift Operating Engineer vacancy. (*Id.* at ¶48). That same day, Windel replied by email that the "position would be offered based on seniority within the staff." (*Id.* at ¶49). On June 23, 2015, Plaintiff showed the Chief Human Resources Officer, Eddie Potts ("Potts"), a letter from his doctor that indicated the "vital importance of his nocturnal sleep need," and requested that Potts provide Plaintiff with an ADA accommodation by transferring him to the posted first-shift Operating Engineer opening. (*Id.* at ¶¶50-53). Plaintiff does not allege when he was not selected for this position, or when and by whom it was filled.

On May 26, 2016, Plaintiff was found sleeping on the job. (*Id.* at ¶55). On June 17, 2016, Defendant terminated Plaintiff's employment. (*Id.* at ¶54). Plaintiff alleges that his termination was an instance of "disability discrimination." (*Id.*)

On August 18, 2016, Plaintiff filed with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission a written charge of discrimination against Defendant. (*Id.* at ¶15(a)). On November 2, 2016, the EEOC mailed to Plaintiff a Notice of Right to Sue. (*Id.* at ¶15(b)). On January 31, 2017, Plaintiff filed his complaint in this matter. [ECF 1].

**LEGAL STANDARD**

When considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The court must "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679). The complaint must do more than merely allege the plaintiff's entitlement to relief; it must "show such an entitlement with its facts." *Id.* (citation and internal quotation marks omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'— 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege facts sufficient to "'nudge [his or her] claims across the line from conceivable to plausible.'" *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 570).

**DISCUSSION**

Plaintiff's complaint contains four counts. Specifically, at Counts I and II, Plaintiff avers that Defendant unlawfully discriminated against him because of his race, color, and/or national origin or, in the alternative, that Defendant's conduct toward Plaintiff constituted a hostile work environment, in violation of Title VII[1] and § 1981.[2] (Compl. at ¶¶56-59, 60-64). Consistent with these averments, this Court has liberally construed these counts as asserting Title VII and § 1981 claims of denial of transfer, wrongful termination, and hostile work environment.[3] At Count III, Plaintiff avers that Defendant unlawfully discriminated against him because of a disability and/or a perceived disability or, in the alternative, that Defendant's conduct toward Plaintiff constituted a hostile work environment, in violation of the ADA.[4] (*Id*. at ¶¶65-70). Again, consistent with

---

[1] Under Title VII, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

[2] Section 1981 provides that:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981.

[3] Generally, the substantive elements of Title VII and § 1981 race employment discrimination claims are interpreted to be identical. *Brown v. J. Kaz, Inc*., 581 F.3d 175, 181-82 (3d Cir. 2009).

[4] The ADA provides that:

> No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a).

these averments, this Court has liberally construed this count as asserting ADA claims of discrimination based on a failure to accommodate, wrongful termination, and hostile work environment. Lastly, at Count IV, Plaintiff avers that Defendant unlawfully discriminated against Plaintiff in violation of his rights under the PHRA. (*Id*. at ¶¶71-73).

Defendant moves to dismiss Plaintiff's claims of unlawful employment discrimination on the grounds that: (1) Plaintiff failed to allege sufficient facts to support the alleged claims; (2) some of Plaintiff's Title VII and ADA claims are time-barred because they accrued more than 300 days prior to Plaintiff's filing of his charge with the EEOC; and (3) Plaintiff's PHRA claims should be dismissed for failure to exhaust administrative remedies. In his response, Plaintiff agrees to withdraw the PHRA claims, without prejudice, but disputes Defendant's remaining arguments as to the insufficiency of facts alleged to support his claims and maintains that the Title VII and ADA claims are not time-barred pursuant to the *continuing violations* theory. Notwithstanding, Plaintiff requests leave to amend the complaint in the event this Court grants Defendant's motion to dismiss. This Court will address each of Plaintiff's claims in turn.

### *Title VII and § 1981 Denial of Transfer Claims*

Under Title VII and § 1981, it is unlawful for an employer to discriminate against any individual with respect to employment and/or employment-related matters because of that individual's race and/or color.[5] Title VII makes it also unlawful for an employer to discriminate against any individual because of his or her national origin. Here, Defendant contends that

---

[5] Unlike Title VII, § 1981 only provides a remedy for racial and/or color discrimination, not national origin discrimination. *See Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 613 (1987) (holding that § 1981 does not provide a remedy to plaintiffs discriminated against "solely on the place or nation of [their] origin."); *Broom v. Saints John Neumann & Maria Goretti Catholic High Sch.*, 722 F. Supp. 2d 626, 631 (E.D. Pa. 2010) (citing *Saint Francis Coll.*); *see also Manuel v. City of Philadelphia*, 2010 WL 3566767, at *5 (E.D. Pa. Sept. 14, 2010) ("§ 1981 only allows claims arising from discrimination based on race or color.") (citation and internal quotation marks omitted).

Plaintiff's Title VII and § 1981 denial of transfer claims fail because Plaintiff has not alleged sufficient facts for this Court to reasonably infer that Defendant's denial of Plaintiff's requests to transfer to the first shift was based on his race, color, and/or national origin.[6] This Court agrees.

To assert a viable claim for employment discrimination under Title VII and § 1981, the plaintiff must allege facts sufficient to show that: (1) he is a member of a protected class; (2) he is qualified for the position or satisfactorily performed the duties required by his position; (3) he suffered an adverse employment action; and (4) either similarly-situated non-members of the protected class were treated more favorably, or the circumstances of the adverse employment action give rise to an inference of unlawful discrimination. *Groeber v. Friedman & Schuman, P.C.*, 555 F. App'x 133, 135 (3d Cir. 2014) (Title VII); *Wallace v. Federated Dep't Stores, Inc.*, 214 F. App'x 142, 144-45 (3d Cir. 2007) (§ 1981). "While similarly situated does not mean identically situated, the plaintiff must nevertheless be similar in all relevant respects." *Opsatnik v. Norfolk S. Corp.*, 335 F. App'x 220, 222-23 (3d Cir. 2009) (citation and internal quotation marks omitted). Allegations to consider when comparing a defendant's treatment of a plaintiff with its treatment of a similarly-situated non-member of the plaintiff's protected class include, but are not limited to, "that the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Id.* at 223 (citation and internal quotation marks omitted). In addition to direct comparator allegations, an inference of discrimination can also be supported by allegations "of similar racial

---

[6] In his complaint, Plaintiff alleges that his "national origin is Filipino." (Compl. at ¶21). While Plaintiff does not assert any specific facts concerning his race or color, for purposes of this Memorandum Opinion, in addressing Plaintiff's Title VII and § 1981 claims, this Court will liberally construe this allegation as also an assertion of Plaintiff's race and color, as well as his national origin. *See Schouten v. CSX Transp., Inc.*, 58 F. Supp. 2d 614, 618 n.6 (E.D. Pa. 1999) (noting that "insofar as a claim for discrimination based upon ancestry or ethnic characteristics is actionable under § 1981, it is only because such a claim is understood to be a claim for race discrimination.").

discrimination of other employees, or [allegations] of discrimination from statements or actions by [the plaintiff's] supervisors suggesting racial animus." *Golod v. Bank of Am. Corp.*, 403 F. App'x 699, 702 n.2 (3d Cir. 2010); *see also Hobson v. St. Luke's Hosp. & Health Network*, 735 F. Supp. 2d 206, 214 (E.D. Pa. 2010).

As to the denial of transfer claims, Plaintiff asserts that: (1) on December 15, 2014, Plaintiff met with Windel and requested a transfer for health reasons to a first-shift opening of an unspecified position, but on January 12, 2015, this first-shift opening was awarded to a Caucasian employee from the maintenance department, (Compl. at ¶¶30-45); (2) on May 20, 2015, Plaintiff sent an email to Sherman and Windel formally requesting transfer to the May 4, 2015 first-shift Operating Engineer vacancy, and on June 23, 2015, Plaintiff discussed the health reasons for his interest in this vacancy with Potts, (*id.* at ¶¶48, 50-53); and that (3) Plaintiff continually informed Defendant of his interest in transferring to a first-shift work schedule, and Defendant assured Plaintiff that he could request a transfer if there was a first-shift opening. (*Id.* at ¶¶27-28).

Of these factual allegations, possibly one of them conceivably relates to his claims of race, color, and/or national origin discrimination: the January 12, 2015 hiring of a Caucasian maintenance employee to fill a first-shift opening for an unspecified position Plaintiff had requested. (*Id.* at ¶¶44-45). However, Plaintiff fails to allege whether the vacancy was for an Operating Engineer position or some other position for which he was qualified. Thus, as to this contention, Plaintiff does not satisfy the second prong for a discrimination claim because it is impossible to determine whether Plaintiff was qualified for the unspecified position. Further, based on the meager factual allegations pled regarding the requirements of the vacant position, it is impossible to ascertain whether the individual selected was similarly situated to Plaintiff but

7

treated differently by Defendant. In light of the lack of information, the complaint does not satisfy the fourth discrimination prong. Consequently, Plaintiff's Title VII and § 1981 denial of transfer claims premised on the December 2014 vacancy are deficient and, therefore, are dismissed.[7]

As to Plaintiff's denial of transfer claims premised on his request to transfer to the May 4, 2015 first-shift Operating Engineer vacancy, Plaintiff's complaint again does not satisfy the fourth discrimination prong for a denial of transfer claim. The complaint is devoid of any factual allegations showing that either similarly-situated non-members of Plaintiff's protected class were treated more favorably than Plaintiff, or that the circumstances of the adverse employment action give rise to an inference of unlawful discrimination. The complaint is also devoid of any factual allegations relating to race, color, and/or national origin regarding the May 4, 2015 first-shift Operating Engineer vacancy claims. Further, the complaint does not allege if this vacancy was

---

[7] In addition to failing on the merits, this Title VII denial of transfer claim is also time-barred because it is based on allegations of events that occurred more than 300 days before Plaintiff's filing of his charge of discrimination with the EEOC. In a deferral state, such as Pennsylvania, Title VII requires a complainant to file a charge of discrimination with the EEOC "within three hundred days after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1). This time limit is construed as a statute of limitations, and any claims based on discrete acts occurring prior to that date are time-barred. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). Although recognizing that the acts on which this Title VII claim is based occurred more than 300 days prior to filing his charge, Plaintiff argues that this claim survives the time-bar under the continuing violations theory. Plaintiff is incorrect. The Supreme Court indicated that the continuing violations theory does not apply to claims based on discrete acts, "such as termination, failure to promote, denial of transfer, or refusal to hire," because "[e]ach incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable unlawful employment practice." *Id*. at 114 (internal quotation marks omitted). The continuing violations theory permits the inclusion of otherwise time-barred factual allegations in valid hostile work environment claims because "[t]he unlawful employment practice [] cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own." *Id.* at 115 (internal quotation marks omitted). This Court takes judicial notice that the date 300 days prior to Plaintiff's filing of his charge of discrimination with the EEOC on August 18, 2016, is October 23, 2015. Thus, all Title VII denial of transfer claims premised on acts that occurred prior to October 23, 2015, are time-barred. Plaintiff's complaint alleges that on January 12, 2015, Defendant chose a Caucasian employee from the maintenance department to fill the December 2014 first-shift opening that Plaintiff had previously requested. (Compl. at ¶¶44-45). This denial of transfer claim effectively accrued on January 12, 2015, the date the first-shift opening Plaintiff requested was filled by someone other than the Plaintiff and, therefore, is dismissed as time-barred.

ever filled. Thus, Plaintiff's Title VII and § 1981 denial of transfer claims premised on the May 4, 2015 vacancy are deficient and, therefore, are dismissed.

Likewise, Plaintiff's Title VII and § 1981 denial of transfer claims premised on the allegation that he "continually informed Defendant that he wanted to make the transfer to a standard work schedule" lack sufficient specificity to survive a motion to dismiss. (*Id.* at ¶27). Plaintiff's contention is a mere "naked assertion[] devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 557). Plaintiff's complaint does not provide the dates, other than the dates specifically addressed above, on which he made these continual requests, whether the requests were made to fill an existing first-shift vacancy, or who Defendant chose to fill the specific openings Plaintiff allegedly continually requested. *See e.g.*, *Vuong v. Mgmt. of J.C. Penney's Co.*, 169 F. App'x 675, 677 (3d Cir. 2006) (affirming grant of summary judgment of Title VII denial of transfer claims where the plaintiff failed to present evidence showing that the positions the employee requested existed or had openings at the times she applied). Plaintiff's Title VII and § 1981 denial of transfer claims premised on his vague assertion of continually requesting transfer to the first shift are deficient and, therefore, are dismissed. In sum, all of Plaintiff's Title VII and § 1981 denial of transfer claims are dismissed.

### *Title VII and § 1981 Wrongful Termination Claims*

Defendant also argues that Plaintiff has failed to plead facts sufficient to show that Defendant terminated Plaintiff because of his race, color, and/or national origin. This Court agrees. For a Title VII or § 1981 wrongful termination claim to survive a motion to dismiss, the plaintiff must assert "sufficient factual matter that permits the reasonable inference that [he] was terminated or retaliated against because of [his] race [] and/or national origin." *Golod*, 403 F.

App'x at 702. Plaintiff's complaint contains no factual allegations connecting Plaintiff's termination to his race, color, and/or national origin. While Plaintiff asserts that he is part of a protected class because he is Filipino, (Compl. at ¶21), the complaint is devoid of any allegations that similarly-situated non-members of his protected class were treated more favorably or any other facts that could support an inference of discrimination regarding his termination. In fact, Plaintiff describes his termination as "an act of even more grotesque *disability* discrimination . . . ." (*Id*. at ¶54) (emphasis added). Plaintiff simply does not assert any facts that would permit this Court to infer or conclude that he was terminated on account of his race, color, and/or national origin. Plaintiff's Title VII and § 1981 wrongful termination claims are deficient and, therefore, are dismissed. *See Jenkins v. Polysciences, Inc.*, 2017 WL 1361689, at *3 (E.D. Pa. Mar. 29, 2017) (dismissing the plaintiff's Title VII claim for failure to plead any facts that would have raised a reasonable inference that the defendant terminated the plaintiff because of the plaintiff's race).

*Title VII and § 1981 Hostile Work Environment Claims*

Defendant argues that Plaintiff's complaint does not allege facts sufficient to show that a hostile work environment was created or caused by Defendant's actions relating to Plaintiff's race, color, and/or national origin. This Court agrees.

To assert a viable hostile work environment claim under Title VII and § 1981, a plaintiff must allege facts sufficient to show that: (1) the plaintiff suffered intentional discrimination because of his race, color, and/or national origin; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected him; (4) the discrimination would have detrimentally affected a reasonable person in similar circumstances; and (5) a basis for *respondeat superior* liability existed. *Mandel v. M & Q Packaging Corp*., 706 F.3d 157, 167 (3d

Cir. 2013) (Title VII); *Castleberry v. STI Grp.*, 863 F.3d 259, 2017 WL 2990160, at *2 (3d Cir. July 14, 2017) (§ 1981) (citations and internal quotation marks omitted). The severe or pervasive requirement presents alternative possibilities. That is, "some harassment may be severe enough to contaminate an environment even if not pervasive; other, less objectionable, conduct will contaminate the workplace only if it is pervasive. . . . [A]n isolated incident of discrimination (if severe) can suffice to state a claim for harassment." *Castleberry*, 2017 WL 2990160, at *3 (citation and internal quotation marks omitted). When determining whether a plaintiff's complaint satisfies the second element of a Title VII or § 1981 hostile work environment claim, courts consider the entirety of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys.,* 510 U.S. 17, 23 (1993); s*ee also Mandalapu v. Temple Univ. Hosp.*, 2016 WL 5404466, at *7 (E.D. Pa. Sept. 27, 2016) (dismissing employee's § 1981 hostile work environment claim for failure to plead factual allegations that suggested the workplace environment "interfered with Plaintiff's work performance" and was "permeated with discriminatory intimidation, ridicule, and insult or was otherwise abusive.") (citation and internal quotation marks omitted).

Upon review of the complaint, Plaintiff states two factual allegations relating to race, color, and/or national origin, *to wit*: that (1) Plaintiff is Filipino, (Compl. at ¶21); and (2) on January 12, 2015, Defendant hired a Caucasian maintenance employee to fill a first-shift opening that Plaintiff had previously requested. (*Id.* at ¶¶44-45). These two factual allegations, separate or combined, are insufficient to plausibly allege severe or pervasive discrimination based on

race, color, and/or national origin. Without more, Plaintiff's hostile work environment claims are deficient and, therefore, are dismissed.

*ADA Discrimination Claims Based on a Failure to Accommodate*

Defendant argues that Plaintiff's ADA discrimination claims are time-barred and deficient because Plaintiff did not allege sufficient facts to support an inference that Defendant denied Plaintiff's requests to transfer to the first shift because of his disability or perceived disability.

To assert a viable claim for employment discrimination under the ADA, a plaintiff must allege facts sufficient to show that the plaintiff: (1) is a disabled person within the meaning of the ADA;[8] (2) is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the defendant; and (3) suffered an adverse employment decision because of disability discrimination. *See Williams v. Philadelphia Hous. Auth. Police Dep't*, 380 F.3d 751, 761 (3d Cir. 2004) (citations and internal quotation marks omitted). "Adverse employment decisions in this context include refusing to make reasonable accommodations for a plaintiff's disabilities." *Id.* Here, Plaintiff premises the third prong of his ADA discrimination claims on Defendant's failure to consider his diabetes and provide him with reasonable accommodations. In order to satisfy the third prong of an ADA discrimination claim based on a failure to accommodate, the plaintiff must plead the following four elements: (1) the defendant knew about the plaintiff's disability; (2) the plaintiff requested accommodations or assistance for his disability; (3) the defendant did not make a good faith effort to assist the plaintiff in seeking

---

[8] The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment . . . ." 42 U.S.C. § 12102(1)(A)-(C). Plaintiff alleges that he has diabetes and claims that he is disabled as a result. (Compl. at ¶¶20, 66-67). Defendant has not challenged Plaintiff's allegations that his diabetes is a disability within the meaning of the ADA. Therefore, for purposes of this Memorandum Opinion, this Court will assume that Plaintiff is disabled within the meaning of the ADA.

accommodations; and (4) the plaintiff could have been reasonably accommodated but for the defendant's lack of good faith. *Colwell v. Rite Aid Corp.*, 602 F.3d 495, 504 (3d Cir. 2010) (citation and internal quotation marks omitted). Reasonable accommodation is defined in the relevant regulation, *inter alia*, as:

> [m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable an individual with a disability who is qualified to perform the essential functions of that position.

29 C.F.R. § 1630.2(o)(1)(ii). Further, shift changes are changes in the workplace condition that are entirely under the employer's control and "the ADA contemplates that employers may need to make reasonable shift changes in order to accommodate a disabled employee's disability-related difficulties . . . ." *Colwell*, 602 F.3d at 506. Additionally, "[t]he ADA [has] identified the reassignment of a disabled employee to a vacant position as a 'reasonable accommodation' of an employee's disability. Under the ADA's Title I, an employer's failure to transfer a disabled employee to a vacant position constitutes discrimination." *Fowler*, 578 F.3d at 208 (citing 42 U.S.C. § 12111(9)); *see also* 29 C.F.R. § 1630.2(o)(2)(ii) ("Reasonable accommodation may include but is not limited to . . . [j]ob restructuring; part-time or modified work schedules; reassignment to a vacant position . . . .").

Regarding Plaintiff's failure to accommodate claim premised on Defendant's failure to grant his request to transfer him to the December 2014 first-shift opening, Plaintiff's complaint does not satisfy the second element of an ADA discrimination claim, *i.e.* qualification, since it fails to provide any information about the position or whether Plaintiff was qualified. Thus,

Plaintiff's failure to accommodate claim based on Defendant's failure to grant his requested transfer to the December 2014 first-shift opening is deficient and, therefore, is dismissed.[9]

In contrast, Plaintiff's failure to accommodate claim premised on the requested transfer to the May 4, 2015 first-shift Operating Engineer vacancy is supported by factual allegations sufficient to satisfy each of the pleading requisites for an ADA discrimination claim. First, Plaintiff alleged that he is a disabled person within the meaning of the ADA. (Compl. at ¶¶20, 66-67). Second, Plaintiff's allegations support the reasonable inference that, as an Operating Engineer, he was qualified for the May 4, 2015 first-shift Operating Engineer vacancy. Third, Plaintiff has plausibly alleged that he suffered an adverse employment decision based on a failure to accommodate by asserting, *to wit*: (1) that Defendant knew about Plaintiff's diabetes because Plaintiff informed Defendant of his health condition in December 2014 and June 2015, (*id*. at ¶¶30-43, 50-53); (2) that Plaintiff requested a transfer to the May 4, 2015 first-shift vacancy as an ADA accommodation, (*id.* at ¶¶50-53); (3) that although the complaint does not provide whether this vacancy was filled, Defendant clearly did not accommodate Plaintiff; and (4) that because Plaintiff alleges that a first-shift vacancy occurred in December 2014 and another in May 2015, a reasonable fact-finder can infer that Defendant could have reasonably

---

[9] Additionally, this claim is time-barred because it is premised on factual allegations occurring before October 23, 2015. *See Zankel v. Temple Univ*., 245 F. App'x 196, 198 (3d Cir. 2007) (Under 42 U.S.C. § 12117(a), "[t]he same powers, remedies, and procedures used to enforce Title VII of the Civil Rights Act of 1964 ('Title VII') apply to ADA employment discrimination claims."); *supra* at note 7. (discussing time-barred claims).
    Plaintiff again contends that this claim survives under the continuing violations theory. Plaintiff is again mistaken. "A reasonable accommodation request is a one-time occurrence rather than a continuing practice, and therefore, does not fit under the continuing violations theory." *Mercer v. SEPTA*, 608 F. App'x 60, 63 (3d Cir. 2015) (referring to *Aubrey v. City of Bethlehem*, 466 F. App'x. 88, 92 (3d Cir. 2012)); *see also Muhammad v. Court of Common Pleas of Allegheny Cty., Pa*., 483 F. App'x 759, 762 (3d Cir. 2012) (affirming the District Court's reasoning that the continuing violations theory did not apply to ADA accommodation claims because each failure to accommodate was an independent act).

accommodated Plaintiff by transferring him to a first-shift vacancy.[10] *See*, *e.g.*, *Colwell*, 602 F.3d at 504; 29 C.F.R. § 1630.2(o)(2)(ii) ("Reasonable accommodation may include but is not limited to . . . [j]ob restructuring; part-time or modified work schedules; reassignment to a vacant position . . . ."). Therefore, Defendant's motion to dismiss the ADA discrimination claim premised on Defendant's failure to accommodate Plaintiff when he requested transfer to the May 4, 2015 first-shift Operating Engineer vacancy is denied.

Lastly, Plaintiff's ADA discrimination claim premised on his continual requests to transfer to a first-shift position does not satisfy the second element of an ADA failure to accommodate claim. Plaintiff has not pled that when he "continually informed Defendant that he wanted to make the transfer to a standard work schedule" he was, in fact, requesting an ADA accommodation for his disability. (Compl. at ¶27). Thus, this aspect of Plaintiff's ADA discrimination claim is deficient and, therefore, this claim is dismissed.

### *ADA Wrongful Termination Claim*

Defendant argues that Plaintiff's ADA wrongful termination claim fails because Plaintiff did not allege facts sufficient to show that Defendant terminated Plaintiff's employment because of his disability or perceived disability rather than because he was found sleeping at work. This Court disagrees.

---

[10] In its motion, Defendant argued that this claim is barred by the statute of limitations. However, a motion to dismiss can only be granted based on a statute of limitations, if the statute's applicability is apparent on the face of the complaint. *Robinson v. Johnson,* 313 F.3d 128, 135 (3d Cir. 2002); *see also Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.1 (3d Cir. 1994); *Bethel v. Jendoco Constr. Corp.,* 570 F.2d 1168, 1174 (3d Cir. 1978) ("If the bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6)."). The complaint does not allege when or if this position was ever filled by someone else, or closed for another reason. Therefore, Plaintiff's termination date will be used for statute of limitations purposes on this claim at this stage of litigation. *See Fowler*, 578 F.3d at 209 (holding that an employee's termination date was the starting date for statute of limitations purposes for her unlawful disability discrimination claim based on failure to accommodate by transferring to a vacant position when she was terminated prior to learning whether the vacant position was filled). As a result, it is not "apparent on the face of the complaint" that this claim is barred by the statute of limitations and, therefore, Defendant's motion to dismiss Plaintiff's claim on this ground is denied.

"To state a cognizable disability discrimination claim, [the plaintiff] must allege that [his] termination . . . was a pretext or otherwise an instance of discrimination on the basis of disability." *Zankel*, 245 F. App'x at 199. Plaintiff's allegations that pertain to this claim are that: (1) "Defendant unlawfully disciplined Plaintiff for falling asleep on or about May 26, 2016 at work despite being aware of his disability and its intersection with his sleeping problems," (Compl. at ¶55); and (2) "[i]n an act of even more grotesque disability discrimination, on or about June 17, 2016, Defendant unlawfully terminated Plaintiff." (*Id.* at ¶54). At this stage in the litigation, accepting these factual allegations as true and construing them in the light most favorable to Plaintiff, Plaintiff appears to have alleged sufficient facts suggesting unlawful disability discrimination surrounding his termination. *See Phillips*, 515 F.3d at 233 (citing *Pinker*, 292 F.3d at 374 n.7). Therefore, Defendant's motion to dismiss Plaintiff's ADA wrongful termination claim is denied.

### *ADA Hostile Work Environment Claim*

Defendant argues that Plaintiff's ADA hostile work environment claim fails because Plaintiff's complaint only alleges discrete acts, and does not assert facts sufficient to show that Defendant discriminated against Plaintiff because of his disability or perceived disability. In response, Plaintiff argues that repeated refusals to accommodate are not discrete acts, but rather, constitute a continuing violation that culminated in his termination. Plaintiff requests that this Court permit discovery to determine the severity or pervasiveness of the alleged discrimination. Plaintiff's argument, however, is misguided.

To assert a viable hostile work environment claim under the ADA, the plaintiff must allege facts sufficient to show that: (1) the plaintiff is a qualified individual with a disability under the ADA; (2) the plaintiff was subjected to unwelcome harassment; (3) the plaintiff was

harassed because of his disability or a request for an accommodation; (4) the harassment of the plaintiff was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and to create an abusive working environment; and (5) the defendant knew or should have known of the harassment and failed to take prompt effective remedial action. *Walton v. Mental Health Ass'n. of Se. Pennsylvania*, 168 F.3d 661, 667 (3d Cir. 1999).

The complaint does not satisfy the pleading requirement for any of the elements, save the first one. The only allegations related to Defendant's treatment of Plaintiff on account of his disability or perceived disability are that he was discriminated against by not being accommodated, and that he was terminated. These allegations do not set forth a claim for hostile work environment, and nothing in Plaintiff's allegations even suggests that Plaintiff was subject to an abusive working environment on account of his disability or his requests for accommodation. As Plaintiff has failed to allege any facts supporting his ADA hostile work environment claim, this claim is dismissed.

### *PHRA Claims*

In Count IV of the complaint, Plaintiff avers that Defendant unlawfully discriminated against Plaintiff in violation of his rights under the PHRA. (Compl. at ¶¶71-73). Defendant moves to dismiss these claims for failure to exhaust administrative remedies. As noted, in his response, Plaintiff acknowledged his failure to exhaust administrative remedies and requested permission to withdraw his PHRA claims, without prejudice, to file them again after August 18, 2017. Defendant does not state any objection to this request in its reply brief. [ECF 15]. Accordingly, this Court will permit Plaintiff to withdraw his PHRA claims without prejudice.[11]

---

[11] In his opposition to the motion to dismiss, Plaintiff requests leave to amend the complaint. At this juncture, this Court declines to rule on Plaintiff's request for leave to amend the complaint and directs Plaintiff to Rule 15.

17

**CONCLUSION**

For the foregoing reasons, Defendant's motion to dismiss is granted, *in part*, and denied, *in part*, as follows:

I. Plaintiff's claims pursuant to Title VII of the Civil Rights Act of 1964 are dismissed.

II. Plaintiff's claims pursuant to 42 U.S.C. § 1981 are dismissed.

III. Plaintiff's claims pursuant to the Americans with Disabilities Act of 1990, as amended by the ADA Amendments Act of 2008, are dismissed, except for Plaintiff's disability discrimination claim premised on Defendant's failure to accommodate Plaintiff when he requested transfer to the May 4, 2015 first-shift Operating Engineer vacancy and Plaintiff's wrongful termination claim.

IV. Plaintiff's claims pursuant to the Pennsylvania Human Relations Act are withdrawn by agreement.

An Order consistent with this Memorandum Opinion follows.


NITZA I. QUIÑONES ALEJANDRO, U.S.D.C. J.